UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR ENVIRONMENTAL SCIENCE, ACCURACY & RELIABILITY,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO REGIONAL COUNTY SANITATION DISTRICT,<br><br>Defendant. | **1:15-cv-01103 LJO BAM**<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND (Doc. 28)**<br><br>**CLERK TO CLOSE CASE** |

## I. INTRODUCTION

Plaintiff Center for Environmental Science, Accuracy & Reliability ("CESAR") brings this citizen-suit action alleging Defendant Sacramento Regional County Sanitation District ("Regional San") violated the Endangered Species Act ("ESA"). Doc. 8 (First Amended Complaint ("FAC")). Regional San owns and operates a wastewater treatment plant in Sacramento County that discharges ammonia into the Sacramento San Joaquin Delta, an ecosystem that is home to ESA-listed species, including the threatened delta smelt. *See* FAC ¶ 1. Plaintiff alleges that Regional San's discharges are toxic to delta smelt food supply, impair delta smelt feeding, and thereby have adverse population-level effects on the delta smelt. *Id*. ¶ 45. This is alleged to violate ESA § 9, 16 U.S.C. § 1538, which prohibits, among other things the "take"[1] of any ESA-listed species. 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. §

---

[1] The term "take" is defined as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). ESA implementing regulations define "harm" to include, among other

1

17.31(a).

Before the Court for decision is Regional San's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). Doc. 28. Specifically, Regional San argues that Plaintiff (1) failed to comply with the ESA's citizen suit notice requirements and (2) lacks standing to sue. Plaintiff filed an opposition, Doc. 33, and Defendant replied. Doc. 34. The matter was taken under submission on the papers pursuant to Local Rule 230(g). Doc. 35.

## II. <u>STANDARD OF DECISION</u>

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981).

A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

In resolving a factual attack on jurisdiction, the district court may review and weigh evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence

---

things, "significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding, or sheltering." 50 C.F.R. § 17.3.

1   necessary to satisfy its burden of establishing subject matter jurisdiction."); *White*, 227 F.3d at 1242;

2   *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). In a factual attack, the Court need not

3   presume the truthfulness of the plaintiff's allegations. *White*, 227 F.3d at 1242

4   ### III. DISCUSSION

5   **A.    ESA Notice Requirement.**

6            The ESA provides that "no action may be commenced . . . prior to sixty days after written notice

7   of the violation has been given to the Secretary, and to any alleged violator of any such provision or

8   regulation." 16 U.S.C.A. § 1540(g)(2)(A)(i). "This sixty-day notice requirement is jurisdictional."

9   *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 647 (9th Cir. 2015). "Accordingly, it is

10  a 'mandatory condition [ ] precedent to commencing suit' under the ESA." *All. for the Wild Rockies v.*

11  *U.S. Dep't of Agric.*, 772 F.3d 592, 601 (9th Cir. 2014) (*quoting Hallstrom v. Tillamook Cnty.*, 493 U.S.

12  20, 31 (1989)). "A failure to strictly comply with the notice requirement acts as an absolute bar to

13  bringing suit under the ESA." *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d

14  515, 520 (9th Cir. 1998). A district court may not disregard such a notice requirement at its discretion."

15  *See Hallstrom*, 493 U.S. at 31. The language used in the ESA's[2] notice requirement "could not be

16  clearer." *Id.* at 26. Accordingly, the Supreme Court has stated that "[a] citizen may not commence an

17  action [] until 60 days after the citizen has notified the [federal agency]." *Id.* Further, such notice "allows

18  Government agencies to take responsibility for enforcing environmental regulations, thus obviating the

19  need for citizen suits." *Id*. at 29. "In many cases, an agency may be able to compel compliance through

20  administrative action, thus eliminating the need for any access to the courts." *Id.* "This policy would be

21  frustrated if citizens could immediately bring suit without involving federal or state enforcement

22  agencies." *Id.*

23  _____

24  [2] While *Hallstrom* involved an action brought under the Resource Conservation and Recovery Act's ("RCRA") citizen suit
    provision, RCRA's notice requirement is identical to that used in the ESA, *see* 42 U.S.C. § 6972(b)(1)(A), and courts in the
25  Ninth Circuit routinely rely on *Hallstrom* when applying the ESA's notice requirement. *See Sw. Ctr.*, 143 F.3d at 520.

1    Here, Regional San argues that this Court does not have subject matter jurisdiction over this case

2  because CESAR did not comply with the notice requirement. Doc. 28-1 at 6-9. It is undisputed that

3  CESAR sent notice to Regional San and that Regional San received notice of the lawsuit, as

4  demonstrated by a certified mail receipt indicating notice was delivered to Regional San. Doc. 1-1 at 8

5  (Ex. A to the Original Complaint); Declaration of Annie P. Yu ("Yu Decl."), Doc. 33-1, at ¶ 2.

6  However, Regional San argues that CESAR failed to notify the Secretary of the Interior ("Secretary")

7  because, although it is undisputed, yet not conceded, that CESAR placed a copy of the notice in the U.S.

8  mail addressed to the Secretary (Yu Decl. at ¶¶ 3-6), there is no proof that the Secretary received

9  CESAR's notice. (Notably, there is no evidence that CESAR sent the copy addressed to the Secretary by

10  certified mail, return receipt requested.)

11    Regional San submitted Freedom of Information Act ("FOIA") and *Touhy*[3] requests to the

12  Secretary, seeking proof that the Secretary had received notice of CESAR's intent to file suit. *Id.* at 8. In

13  response, the Deputy Director of the United States Department of the Interior's Office of Executive

14  Secretariat and Regulatory Affairs ("OES") provided a declaration describing the Secretary's efforts to

15  comply with these requests. Declaration of Robert Howarth ("Howarth Decl."), Doc. 31. Howarth

16  explained that OES processes all correspondence addressed to Secretary, including ESA notice letters

17  using the Department's Data Tracking System ("DTS"). *Id.* at ECF p. 4. He describes the DTS protocol

18  as follows:

19        The OES administrative staff opens and date-stamps all incoming
          correspondence. Soon thereafter, the OES correspondence staff reviews
20        the letters and creates a record of the received correspondence in the
          DTS, which includes assigning the correspondence to the appropriate
21        Department office for action. Each DTS record includes fields that
          correlate to data points such as the date the record was created in the

22

---

23  [3] In *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), the Supreme Court upheld the authority of federal agencies to
    promulgate procedural regulations governing "the custody, use and preservation of [its] records, papers and property." Under
24  *Touhy*, a federal agency can create its own regulations for when it will disclose information to third parties. The Department
    of the Interior's *Touhy* regulations are found at 43 C.F.R. §§ 2.280-2.290.

25

DTS, the date of the correspondence, the OES date-stamp on the correspondence, the type of document of the correspondence, the subject of the correspondence, and the names of the addressee and the name of the sender of the correspondence. Once a record is completed, the OES correspondence staff may search the DTS according to these data points as well as others, to locate the record of any particular piece of correspondence.

Managing and documenting· all correspondence sent to the Secretary according to the above-described procedures is a regularly conducted activity of the OES. Documenting the receipt of correspondence sent to the Secretary by creating a record of the correspondence in the DTS is a regular practice of the OES's correspondence maintenance and management activities.

*Id.* at ECF p. 4-5. This system has been in place since 2009. *Id.* at ECF p. 4. Plaintiff did not object to this evidence. Nor did Plaintiff suggest that there was any reason why OES's record-keeping system would have failed with respect to its notice letter. Thus, the Court finds the Deputy Director's testimony competent evidence of a regularly conducted activity. Fed. R. Evid. 803(6). The Deputy Director went on to explain the terms he used when he personally searched DTS for records relating to Plaintiff's notice of intent to sue. *Id.* at ECF p. 6-7. This search was in addition to a search that had previously been conducted pursuant to Regional San's FOIA request. *Id.* at ECF p. 7. This search "failed to locate or disclose that CESAR provided any written notice to the Secretary of its intent to sue the District for alleged violations of the ESA." *Id.* Attached to Howarth's declaration is a copy of a letter from the Department of the Interior's ("Interior") Office of the Solicitor stating that it had no records that were responsive to Regional San's FOIA request. Howarth Decl., Ex. A (Doc. 31-1) at ECF p. 93. Plaintiff does not dispute the adequacy or diligence of Interior's search efforts. Thus, the Court finds that the absence of responsive records is competent evidence that the Secretary never received a copy of the notice letter. Fed. R. Evid. 803(10). Moreover, the evidence of non-<u>receipt</u> is undisputed.

As mentioned, the ESA requires written notice of the violation to be "<u>given</u> to the Secretary, and to any alleged violator of any such provision or regulation." 16 U.S.C.A. § 1540(g)(2)(A)(i)(emphasis added). Plaintiff contends that actual receipt of the notice is not required and argues that if Congress

1    intended to require actual receipt under the ESA's notice provision it would have stated so explicitly.

2    Doc. 33 at 8-9.

3         Plaintiff argues that the act of placing a notice in the mail meets the ESA's notice requirement

4    because "courts recognize that a factual scenario where notice is mailed and a factual scenario where

5    notice is never received can coexist with a finding that notice requirements have been fulfilled." Doc. 33

6    at 7. In support of this argument, Plaintiff cites to several cases interpreting notice requirements in other

7    statutes, regulations, and contracts. *Id.* The first case, *Federal Kemper Life Assurance Company v. Ellis*,

8    involved a Kansas automobile liability insurance statute that did not require companies to "ensure that

9    policy owners actually received the notice, <u>but only to mail the notice to the defendant's address</u>." 28

10   F.3d 1033, 1039 (10th Cir. 1994). Thus, it was indisputable that the defendant in that case only had to

11   provide evidence that such a notice was <u>mailed</u>. *Id.* at 1040. Similarly, *Continental Casualty Company v.*

12   *American Color, Inc.*, concerned a policy that provided the insurance company may cancel coverage "at

13   any time <u>by mailing to the Insured</u> and to any mortgagee designated in this policy . . . at the last address

14   known to the Company or its agent at least a 60 day notice of cancellation." 817 F.2d 1287, 1288 (7th

15   Cir. 1987). The other cases Plaintiff cites all involve similar language. *See Meckel v. Cont'l Res. Co.*,

16   758 F.2d 811, 815 (2d Cir. 1985) ("The indenture provided that notice be given <u>by first-class, postage</u>

17   <u>prepaid mail</u>. That is all the law required [the defendant] to do."); *McLaughlin v. F.D.I.C.*, 796 F. Supp.

18   47, 49 (D. Mass. 1992) (recognizing that the Financial Institutions Reform, Recovery, and Enforcement

19   Act required that the agency-defendant "must <u>mail</u> individual notices to all claimants informing them of

20   the deadline for presenting claims."); *Meadows v. Bicrodyne Corp.*, 573 F. Supp. 1030, 1031 (N.D. Cal.

21   1983) (evaluating compliance with California law providing that  "notice or report shall be deemed to

22   have been given at the time when delivered personally <u>or deposited in the mail</u> or sent by other means of

23   written communication."). Thus, Plaintiff's argument that "when all the statute, regulation or agreement

24   says is that notice must be 'given,' courts uniformly stand aside and let the consequences play out when

25   the notice is lost in the mail," is not supported by these cases. Rather, the language at issue *in each of*

6

1   *these cases* specified that notice could be accomplished by mail. The ESA, in contrast, specifies written

2   notice must be "<u>given to the Secretary</u>," <u>not</u> that such notice must be put in the mail. 16 U.S.C. §

3   1540(g)(2)(A)(i). Thus, these cases do not provide a basis for concluding that notification by mail will

4   necessarily result in compliance with the ESA.

5            Plaintiff next suggests that some "legislature[s] may protect a party from the vagaries of the

6   mails by providing a statutory defense of non-receipt of the notice." Doc. 33 at 8. Again, the case

7   Plaintiff cites for this proposition, *Salta v. I.N.S*, 314 F.3d 1076, 1078 (9th Cir. 2002), does not support

8   the assertion made. *Salta* concerned provisions of the Immigration and Nationality Act requiring

9   delivery of notices of deportation proceedings by certified mail, later amended to permit service by

10  regular mail. *Id*. at 1078-79. A <u>Bureau of Immigration Appeals ("BIA") ruling</u> (not a statutory

11  provision), issued before the statute was amended, applied to notice disputes a burden-shifting approach,

12  presuming effective service if there is proof of attempted delivery of the notice by certified mail, but

13  providing that the presumption may be overcome by "substantial and probative evidence ...

14  demonstrating that there was improper delivery." *Id*. at 1078. The Ninth Circuit remanded the case to the

15  BIA, requiring modifications to the evidentiary burdens applied in the BIA's burden-shifting approach

16  in light of the amendments to the statute, noting "delivery by regular mail does not raise the same

17  'strong presumption' as certified mail, and less should be required to rebut such a presumption." *Id*. at

18  1078. *Salta* does not help Plaintiff's case. Ultimately, Plaintiff cites *Salta* to support its argument that a

19  "legislature can specify [] that a notice lost in the mail does not fulfill a notice requirement," pointing

20  out that no such language is included in the ESA's notice provision. Doc. 33 at 8. The Court assumes

21  Plaintiff is attempting to argue that this Court should be reluctant to read into the ESA's notice provision

22  an affirmative defense of non-receipt because Congress knows how to create such an affirmative

23  defense. The problem is that Plaintiff fails to point to any statutory provision that demonstrates <u>Congress</u>

24  has articulated an affirmative defense of non-receipt in even remotely similar circumstances. As

25  mentioned, the affirmative defense of non-receipt articulated in *Salta* was not created by a legislature;

1   rather it was articulated as part of the BIA's interpretation of the relevant statute. In the absence of such

2   an example, Congress' silence in the ESA is not meaningful.

3          Somewhat more compelling at first glance is Plaintiff's argument that if Congress had intended

4   parties to notify the Secretary by certified mail, it would have done so expressly, pointing to the Safe

5   Drinking Water Act ("SDWA") as an example of a statute with such an express rule. Doc. 33. at 8. But,

6   Plaintiffs do not accurately represent the text of the SDWA, which simply states that notice "shall be

7   given in such manner as the Administrator [of the Environmental Protection Agency ("EPA")] shall

8   prescribe by regulation." 42 U.S.C. § 300j-8. The EPA Administrator, not Congress, promulgated an

9   implementing regulation requiring notice by certified mail, return receipt requested, or by personal

10  service. 40 C.F.R. § 135.11(a)-(b). Similar regulations were promulgated by EPA to implement the

11  Clean Air Act ("CAA") and Clean Water Act ("CWA"). The CAA, like the ESA, prohibits suit "prior to

12  60 days after the plaintiff has given notice of the violation (i) to the [EPA] Administrator, (ii) to the

13  State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order."

14  42 U.S.C. § 7604(b)(1)(A). Regulations promulgated by EPA under the CAA provide that notice must

15  "accomplished by certified mail." 40 C.F.R. § 54.2. The CWA, also administered by the EPA, follows a

16  similar pattern. *See* 33 U.S.C.A. § 1365(b)("No action may be commenced … prior to sixty days after

17  the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which

18  the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order…."); 40

19  C.F.R. § 135.2 ("[N]otice given to the Administrator under this part shall be accomplished by certified

20  mail."). The ESA is jointly administered by Interior and the Department of Commerce ("Commerce").

21  The fact that neither Interior nor Commerce has issued implementing regulations interpreting the ESA's

22  notice provisions in no way bars this Court from interpreting the ESA in such a manner.

23          In the absence of statutory or regulatory guidance, the Court is left to interpret the plain meaning

24  of the statutory language, requiring notice be "<u>given</u> to the Secretary, and to any alleged violator of any

25  such provision or regulation." 16 U.S.C.A. § 1540(g)(2)(A)(i). "Give" means to "voluntarily transfer

1  (property) to another without compensation" or "to present for another to consider" Give, *Black's Law*

2  *Dictionary* (10th ed. 2014). Merriam-Webster defines "given" as "presented as a gift: bestowed without

3  compensation." Given [Def. 2], *Merriam-Webster.com*, http://www.merriam-

4  webster.com/dictionary/given (accessed June 3, 2016). These definitions equate the term "give" with the

5  term "present," which is defined to mean "to bring or introduce into the presence of someone . . . ."

6  Present [Def. 1], *Merriam-Webster.com*, http://www.merriam-webster.com/dictionary/present (accessed

7  June 2, 2016). In the context of the Federal Tort Claims Act ("FTCA"), "present" has been interpreted to

8  require receipt. 28 C.F.R. § 14.2 (interpreting 28 U.S.C. § 2675's requirement that a claim first must be

9  "presented" to the relevant agency as fulfilled when an agency "<u>receives</u> from a claimant ... an executed

10 Standard Form 95 or other written notification of an incident . . . ."); *see also Vacek v. U.S. Postal Serv.*,

11 447 F.3d 1248, 1251 (9th Cir. 2006).[4] Although there is no parallel implementing regulation requiring

12 "receipt" of an ESA notice, the requirement is a reasonable interpretation of the term "present."

13          The Supreme Court and the Ninth Circuit require strict compliance with the notice requirements

14 in ESA and other citizen suit provisions in light of their clear language and policy objectives. *See*

15 *Hallstrom,* 493 U.S. at 28 (observing that since citizen suits are "like any other lawsuit, generally filed

16 by trained lawyers who are presumed to be aware of statutory requirements . . . it is not unfair to require

17 strict compliance with statutory conditions precedent to suit."); *Nat. Res. Def. Council v. Sw. Marine,*

18 *Inc.*, 236 F.3d 985, 997 (9th Cir. 2000) (requiring "strict compliance" with the CWA's notice

19 requirement). In this light, the Court concludes it is not unfair to require that an ESA notice be

20 "received." In this case, which is reviewed under the standards applicable to a speaking motion,

21 Regional San's evidence of non-receipt is undisputed. Based on the evidence presented, the Court finds

22

23  [4] In *Vacek,* the Ninth Circuit determined that the common law "mailbox rule," which creates a rebuttable presumption that at timely mailed document has been received by the addressee, should not apply to notice under the FTCA, in part because of

24  the Supreme Court's repeated admonition that waivers of sovereign immunity, such as that contained in the FTCA, should be interpreted strictly. 447 F.3d at 1251-52. As mentioned, the Supreme Court likewise requires strict compliance with citizen-suit notice requirements. *Hallstrom,* 493 U.S. at 28. Even if, arguendo, a "mailbox rule" applied to the ESA's notice

25  provision, the presumption of receipt would be rebutted, as Regional San's strong evidence of non-receipt is undisputed.

1  that Plaintiff failed to notify the Secretary of its intention to bring the above-captioned suit, as required

2  by the ESA. Because Plaintiff fails to provide evidence showing that such notice was given, it also fails

3  "to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1040 n.2.

4         The Court further finds unavailing Plaintiff's alternative argument that the Fish and Wildlife

5  Service ("FWS"), a subordinate agency within Interior, was "well aware of [Regional San's] Ammonia

6  Discharge and has thus far failed to act." As CESAR acknowledges, Doc. 33 at 9, the Supreme Court

7  has rejected the proposition that "notice-in-fact" excuses noncompliance with the notice provision. *See*

8  *Hallstrom*, 493 U.S. at 25 n 2, 31.

9         Accordingly, the Court GRANTS Regional San's motion to dismiss the action for lack of subject

10  matter jurisdiction. Because amendment could not cure the deficiencies identified above, no leave to

11  amend is granted.

12  **B.**    **Standing.**

13         Because failure to notify the correct parties is a clear impediment to jurisdiction, this Court need

14  not evaluate Regional San's alternative arguments regarding standing. The standing issues raised are far

15  more nuanced than either party acknowledges, further counseling against ruling in the alternative.

16                                          **IV. CONCLUSION**

17         For the reasons set forth above, Regional San's motion to dismiss is GRANTED. This case is

18  DISMISSED WITHOUT LEAVE TO AMEND in its entirety for lack of subject matter jurisdiction. The

19  Clerk of Court is directed to close this case.

20

21  IT IS SO ORDERED.

22     Dated:   **June 3, 2016**                         **/s/ Lawrence J. O'Neill**

23                                         UNITED STATES CHIEF DISTRICT JUDGE

24

25